**STATE of Missouri, Respondent,**

v.

**Charles Edwin WILLIAMS, Appellant.**

**No. 65542.**

Supreme Court of Missouri,
En Banc.

July 17, 1984.

Ray Gordon, Charles E. Buchanan, Public Defender, Joplin, for appellant.

John Ashcroft, Atty. Gen., Victorine Mahon, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

This case presents a sordid tale of unrestrained and violent behavior. The defendant was charged with capital murder, § 565.001, RSMo 1978, and found guilty of murder in the second degree. § 565.004, RSMo 1978.

The deceased victim, Karen Hedges, had lived for a time in a trailer house with her two children and the defendant. She and her children then moved from defendant's trailer into another trailer occupied by a couple named Hodkin and their children. On the evening of July 16, 1982, after Karen had moved, the defendant discovered that she had gone out with another man, and, while he was looking for her, she and her date drove up in a truck about 10:35 PM. The defendant warned the date off, slapped her, dragged her to the Hodkin trailer, and shoved her inside. He determined by manual investigation that she was not wearing a brassiere. He then slapped her into apparent unconsciousness, revived her by pouring iced tea on her, and ascertained by further probing that she was wearing panties under her blue jeans. He then rose, kicked her several times, and warned her that she had "better be there" when he returned. There was evidence, disputed, that he made mention of getting a gun and killing "us all." He then departed the trailer.

Defendant returned after an interval and asked "Where's Karen?" Mrs. Hodkin and a 12-year old girl were seated in the living room of the trailer. The younger children were in bed. On being told that Karen was in the bathroom, perhaps 20 feet away, he went there. Very soon afterwards the occupants of the trailer heard a shot. Defendant started down the hall toward the living room saying, "Somebody get an ambulance; Karen's been shot." He then returned to Karen, who had fallen into the hallway, and was heard to say, "Karen, wake up!" These statements came within seconds after the shot and were admitted without objection.

Counsel offered to prove that defendant then said "that the gun was unloaded and 'I didn't mean to shoot her.'" Counsel also offered to prove that these words were uttered within 15 seconds following the shot. The trial judge sustained the state's objection to the offer. We set forth the balance of the colloquy.

MR. FLEISCHAKER: [Prosecutor] Your Honor, I object. May we approach the bench?

MR. FLEISCHAKER: He's offering his own comments, out of court statements as to something that may or may not have happened. That's hearsay, it's self-serving, and I object for it to come into evidence at this point.

MR. PARRISH: [Defense counsel] Judge, I would respond to that, number one, the statement was made contemporaneously with the incident and is part of the res gestae. Even more importantly, it's an exception to the hearsay rule on excited utterances. He was obviously a person obviously excited. The nature of the truthfulness of the statement, he had not had time to reflect.

MR. FLEISCHAKER: Your Honor, we're missing the whole point. He is offering his client's out of court statements.

MR. PARRISH: It's considered an exception to the hearsay rule.

MR. FLEISCHAKER: If he wants to, he can take the stand.

\*     \*     \*     \*     \*     \*

MR. FLEISCHAKER: Your Honor, that is an attempt to put in the defense's statements without having the defendant take the stand. That's the reason why it's self-serving, why his own admissions are not admissible in evidence since the man is available to testify.

THE COURT: This was a statement he made as he was coming down the hall and he made the statement?

MR. PARRISH: Came down the hall and made the statement.

THE COURT: If he walked down the hall and made the statement, I don't think it's part of the res gestae, it's self-serving. Objection will be sustained.

MR. PARRISH: Even in light of the excited utterances rule, exception to the hearsay rule also.

THE COURT: I don't think it would come within that exception, really.

\*     \*     \*     \*     \*     \*

MR. PARRISH: Or let me go a little farther, I want to make the offer of proof it was less than 15 seconds because that would still come under the excited utterances rule.

MR. FLEISCHAKER: I assume the time frame is correct.

THE COURT: Within 15 seconds?

MR. FLEISCHAKER: Yes.

THE COURT: I still think that's time for a person to think over what they are going to say, make a self-serving statement, so I think the objection will be sustained.

■ We conclude that this evidence was admissible under the "excited utterance" exception to the hearsay rule. Modern commentators discourage the use of the term "res gestae" as lacking in analytical precision, and as covering different hearsay exceptions having diverse rationale.[1] It is recognized that utterances made under stressful circumstances and relating to the event producing the stress have sufficient reliability to require that they be considered by the trier of the fact, rather than being excluded at the threshold by the trial judge.[2] In *State v. Griffin,* 662 S.W.2d 854 (Mo. banc 1983), we gave a

---

1. Professor Wigmore (6 Wigmore, Evidence § 1767 (Chadbourn rev. 1976)) opines that

   [t]he phrase res gestae has long been not only entirely useless, but even positively harmful. It is useless, because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle. It is harmful, because by its ambiguity it invites the confusion of one rule with another and thus creates uncertainty as to the limitations of both.

   See *Meyers v. Smith,* 300 S.W.2d 474, 477 (Mo. 1957) in which Judge Barrett notes the many legal scholars who disapprove of res gestae as a rule of evidence.

2. Federal Rule of Evidence 803(2) defines an "excited utterance" as

   A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

   See also McCormick, *Law of Evidence* § 290 (1972) and the cases cited at *infra* note 3.

rather wide application to the excited utterance exception and held that statements which are essentially testimonial may qualify as excited utterances if made under conditions of stress.

The present utterance was made almost immediately after the shot was fired. There was argument about whether the angle at which the bullet entered was an unlikely one from which a shot intended to kill would be fired. The defendant was charged with capital murder and the element of premeditation was fundamental to a determination of the degree of guilt. The statement supplements other utterances which were admitted and is not redundant. We believe that the statement was necessary to give the jury a complete picture and that it should have been received.

■■■ The prosecutor objected on the basis that the declaration was "self-serving." If a statement otherwise meets the "excited utterance" test it should not be excluded simply because it is helpful to the declarant's position.[3] The trial judge has a measure of discretion, and does not have to admit studied attempts at exculpation, but the question of admissibility is basically a question of law subject to appellate review. Discretion is not a complete answer. *See* extensive discussion, *Straughan v. Asher,* 372 S.W.2d 489, 496 (Mo.App.1963). The proponent of evidence does not have to show that the evidence is without flaw, or that the jury could not find it to be reflective rather than spontaneous, if it meets the general standards for admissibility. Utterances coming so soon after the shooting, and demonstrative of the defendant's intent, should be weighed by the jury rather than by the trial judge. This is especially so when there is no eyewitness testimony.

■■■ Because of our holding on this point no extended discussion is necessary as to the admissibility of a second and possibly inconsistent declaration made by the defendant to an ambulance attendant several minutes later, to the effect that he and Karen were struggling for the gun when it went off. If this statement is offered again the trial judge should be entitled to make a preliminary determination as to whether it meets the excited utterance standard.[4] We will not foreclose the trial judge at this point. He may evaluate it on retrial under the standards of this opinion.

■■■ The defendant also complains about statements made during closing argument by the prosecution which, it is suggested, amount to a comment on the defendant's failure to testify. The first of these is as follows:

> Let me stop right there. Now, ladies and gentlemen, there is no eyewitness as to what happened in that bathroom that the State can produce for you today. There's only two people back there that knows exactly what happened and can tell you—who knows exactly what happened back there.

We have no hesitation in saying that this argument contains an improper reference to the defendant's failure to give testimony. The trial judge was correct in sustaining the objection and in instructing the jury to disregard the argument. Had the objection been overruled there would be serious error. Inasmuch as the case will be retried we do not have to decide whether the trial judge's attempts at correction were sufficient or whether the motion for mistrial should have been granted. The trial judge acted within his authority in judging the effect of the argument on the jury and the adequacy of the corrective measures taken.

■■■ The second statement, during rebuttal argument, was as follows:

> Mr. Williams, I ask you, said she better be there when you get back, or what

**3.** *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 452 (Mo. banc 1980); *Bennette v. Hader,* 337 Mo. 977, 983, 87 S.W.2d 413, 416 (1935); *Walsh v. Table Rock Asphalt Construction Company,* 522 S.W.2d 116, 121 (Mo.App.1975).

**4.** A declaration may meet the "excited utterance" test even though made several minutes after the event giving rise to the excitement, if the excitement persists. *See* cases cited at note 3, *supra.*

were you going to do, and I'll tell you what he was going to do, exactly what he did when she was there.

No objection was taken to this statement. Defendant argues that the "I ask you" phrasing is particularly objectionable.[5] We are not required to determine whether the making of the statement rose to the level of plain error. It is appropriate to express concern about prosecutors' attempts at subtle comment about the defendant's failure to take the stand. Perhaps some of our holdings have been too tolerant of subtle references.[6] A holding that a comment during argument does not require reversal of a particular conviction is not a license for the prosecutor's use of similar arguments in future cases.

The judgment is reversed and the case is remanded for new trial.

RENDLEN, C.J., and HIGGINS, GUNN, and DONNELLY, JJ., concur.

WELLIVER and BILLINGS, JJ., concur in result.

---

**5.** Defendant cites *State v. Lindner*, 282 S.W.2d 547 (Mo.1955); *State v. Shuls*, 329 Mo. 245, 44 S.W.2d 94 (1931); and *State v. Reed*, 583 S.W.2d 531 (Mo.App.1979) in support of his argument that the statement was improper.

**6.** *See, e.g., State v. Rothaus*, 530 S.W.2d 235 (Mo. banc 1975) in which we held that the following remarks by a prosecutor would not reasonably be construed as reference to defendant's failure to testify: "How does the defendant know that [the prescription is] false, forged and counterfeit? You arrive at that decision by circumstances, by looking at the surrounding facts. The only one who can actually say he knows is the defendant"; *State v. Hutchinson*, 458 S.W.2d 553 (Mo. banc 1970) where a prosecutor's argument that defendant could have called any witnesses he wanted to, that he was free to offer any evidence he had and that defendant had offered no evidence was held not to be a reference to the failure of the accused to testify.

In the present case, the State places great emphasis on the fact that the words "accused" and "testify" were not used in the prosecutor's argument. The State, relying on our holding in *State v. Frankoviglia*, 514 S.W.2d 536 (Mo.1974), argues that no direct reference to defendant's failure to testify occurred here. Indirect references to the failure of the accused to testify can be just as damaging as direct references. In the future, therefore, prosecutors should not assume that the only repercussion from the use of such references will be the court's admonition to the jury to disregard the improper comment.