**STATE of Missouri, Respondent,**

v.

**Jesse SCOTT, Appellant.**

**No. 50762.**

Missouri Court of Appeals, Eastern District, Division Nine.

Aug. 4, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 10, 1986.

Application to Transfer Denied Oct. 14, 1986.

Henry B. Robertson, St. Louis, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, John Munson Morris, Asst. Attys. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his jury conviction of murder in the second degree. As a persistent offender, he was sentenced by the court to life imprisonment. We affirm.

Frank Woodson, victim's nephew, lived three houses down from victim. At approximately 8 a.m., he received a telephone call from Aura Harris, who lived upstairs from victim. Harris told Woodson she was hearing noises from downstairs. Woodson went into his backyard and saw defendant and defendant's brother Louis in victim's backyard. Louis was coming out the backdoor of victim's apartment. Defendant asked Woodson if he had seen victim; Woodson said no and went back inside. A third neighbor, Gloria Washington, also heard the noise, saw defendant in victim's backyard, and heard him ask Woodson about victim.

Woodson, after a few minutes, walked over to victim's apartment, passing defendant and Louis on the way. He went up to the front door but found it locked. Going around to the backdoor, which was "cracked" open, he looked inside and saw victim lying on the kitchen floor in a pool of blood, his eyes staring at the ceiling. Woodson entered and asked victim what happened. Victim's eyes focused on him and he started to nod his head up and down. Woodson then asked "[d]id Jesse [defendant] and them do this to you?" Victim continued to nod his head. Woodson then asked Harris to call the police.

Harris, after she called Woodson, heard more noises from victim's apartment, and she heard victim pleading, "No man; No man." She heard him moaning and groaning and then she heard something hit the floor. She looked out the window and saw

defendant standing in the backyard. Later, after calling an ambulance, she went downstairs where Woodson tried to stop her from going into the kitchen where victim lay. She brushed past Woodson and knelt by victim, who was saying "Help me. Help me." She asked victim who did it and victim replied "Jesse did it. Jesse did it. Help me."

Victim was removed in an ambulance and later died from a head injury. He had lacerations of the scalp, fractures and contusions of the brain and skull, contusions of the forehead, nose and left arm, lacerations of the right eyebrow and lower lip, abrasions of the neck, left hand and the left side of the abdominal wall. He also suffered a cut on the back.

Defendant testified in his defense. He claimed he had previously installed security bars on the windows of victim's apartment and had been paid for doing so. On the morning of the murder, after taking his brother Louis to his father's .house and then going to his sister's house, he went to victim's home to check on victim's backdoor, which defendant was to repair. Someone in the backyard, who defendant initially mistook for victim, told defendant victim was not home. Defendant then asked Woodson if he knew where victim was and then left. He denied any further involvement in the crime. On direct examination, defendant admitted to several felony convictions, including a conviction for murder, for which he was sentenced to 42 years. He also admitted he was currently on parole from that sentence.

■ In his first point relied on, defendant claims error in the admission of the testimony of Woodson and Harris concerning victim's responses to their questions, contending the responses were hearsay. However, those responses were properly admitted under the "res gestae" or excited utterance exception to the rule excluding hearsay evidence. This exception permits the admission of a declarant's out-of-court statements made under the immediate and controlling domination of the senses produced by the stress of a startling event, as

the true belief of the declarant unfiltered by his reflective faculties. *State v. Boyd,* 669 S.W.2d 232, 234 (Mo.App.1984); *State v. Van Orman,* 642 S.W.2d 636, 638 (Mo. 1982). A statement made by a declarant, who has been subjected to a startling event, but who has not had an opportunity to fabricate, and which statement relates to the circumstances of the event, is admissible. *State v. Mahone,* 699 S.W.2d 60, 62[3] (Mo.App.1985). The criterion for admission of a statement as "res gestae" or an excited utterance is not the time nor place of the utterance but rather the circumstances surrounding the utterance indicating its trustworthiness. *Boyd,* 669 S.W.2d at 234[2].

■ Here the responses made by victim were trustworthy. Woodson and Harris arrived moments after the assault to find victim lying on the floor in a pool of blood. Victim was clearly under the influence of the assault, obviously a "startling event"; he was in a great deal of pain, and he was passing from consciousness to unconsciousness. The responses were products of the event, and were therefore trustworthy. The fact they were responses to minimal questioning by Harris and Woodson did not vitiate their trustworthiness. *Mahone,* 699 S.W.2d at 62; *State v. Carter,* 674 S.W.2d 655, 656 (Mo.App.1984).

Defendant, in his other point on appeal, alleges error in the overruling of his motion for mistrial after the prosecution referred in closing argument to the fact defendant was on parole at the time of the murder at issue here. In his argument the prosecutor, after referring to two convictions suffered by prosecution witness Frank Woodson, began to refer to defendant.

Now the defendant here had a robbery with a dangerous and deadly weapons prior. That's in the past, I guess. He has a murder second prior—murder in the second degree, while on parole for that, this offense is committed, and the other burglary which he got 105 days as committed, and you can take that into

account to determine his motive to lie here, his motive to fabricate—

At this point defendant objected, claiming that this was improper argument.

 The prosecutor is permitted to argue prior convictions of a testifying defendant as they reflect upon his credibility as a witness, the same as he could attack any other witness's credibility by the use of prior convictions. *State v. Morris*, 662 S.W.2d 884, 890[4] (Mo.App.1983). Defendant, who took the witness stand against the advice of his counsel, admitted his prior convictions, including one for second degree murder, and his status as a parolee on that conviction on direct examination. The prosecution's argument related to matters proffered in evidence by defendant and was obviously an attack upon his credibility as a witness. We find no error in overruling the objection to this argument. *State v. Thomas*, 674 S.W.2d 131, 136–137[10, 11] (Mo.App.1984).

The judgment is affirmed.

CRANDALL, P.J., and KAROHL, J., concur.