**STATE of Missouri, Respondent,**

v.

**Glen BOYLAND, Appellant.**

No. 50853.

Missouri Court of Appeals,
Eastern District,
Division One.

March 10, 1987.

Motion for Rehearing and/or
Transfer Denied
April 9, 1987.

Application to Transfer Denied
May 19, 1987.

Kathleen Murphy Markie, Columbia, for appellant.

William L. Webster, Atty. Gen., Carrie Diane Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

KELLY, Judge.

Appellant Glen Boyland appeals from the judgment and sentence to thirty years imprisonment imposed by the trial court pursuant to the jury recommendation following his conviction on the charge of murder in the second degree in violation of § 565.-021 RSMo.Cum.Supp.1983 (now 1986).

We reverse and remand.

No challenge is raised to the sufficiency of the evidence to support the conviction. The circumstances surrounding the shooting can be briefly summarized. On June 28, 1984, eighteen year old Cris Larimore was killed by a single shot to his head from a shotgun that appellant, then sixteen years old, was holding. Twenty-two year old James Farrell who witnessed the shooting testified that the three of them had spent the morning together, driving around, looking for jobs and at cars before they went to Boyland's home. The shooting, which occurred at Boyland's home, was apparently triggered by Larimore's expressed interest in a car that Boyland wanted to buy. According to Farrell, appellant "appeared a little mad." Larimore left the kitchen where they had been talking to use the bathroom. Appellant also rose from the kitchen table, went to his bedroom and turned on his stereo. Farrell, who had followed appellant, stood in the doorway and watched as appellant, already seated on the floor, reached and pulled a gun case from under the bunk beds and removed a shotgun from the case. Farrell headed back down the hallway, past the bathroom and toward the kitchen.

When Larimore came out of the bathroom and went to appellant's bedroom, Farrell turned and went down the hallway behind Larimore. Farrell was standing in the hallway outside the bedroom door when the gun went off and Larimore fell to the floor. Farrell hid behind the wall outside the bedroom, looked back in, and then went outside.

About thirty seconds after the shot, appellant appeared at the doorway saying, "Don't leave! Don't leave!" to Farrell. Appellant went back into the house, reappeared about thirty seconds later and ran to his neighbor's house to call an ambulance. Farrell went back into the house, to the kitchen to get his cigarettes and then left. An ambulance eventually arrived at Boyland's house where Larimore was pronounced dead. Appellant was subsequently charged with the murder of Larimore.

The sole issue before us is whether the trial court's exclusion of certain statements made by appellant to someone shortly after the fatal shooting was proper.

At the conclusion of the prosecution's case-in-chief and prior to his opening statement, appellant made an offer of proof in response to the prosecution's motion in limine to exclude certain testimony appellant sought to introduce. Appellant prefaced his offer of proof to the court out of the jury's hearing by summarily noting that, based on the testimony of Farrell, the prosecution's sole eyewitness, after the fatal shot was fired, appellant had emerged from his home in about thirty seconds, called to Farrell who was already outside in his car not to leave, went back inside, returned about a half minute later and, after admonishing Farrell not to leave, appellant ran to the home of his neighbor who had a telephone.

Appellant then presented his offer of proof by eliciting through direct questions the testimony of the neighbor Mary Regot. According to Mrs. Regot, an attorney, her home is across the street from appellant's, less than one hundred yards away. She testified that she heard someone running up the gravel drive. Appellant, who was extremely upset, appeared at her door. Talking very fast, he said, "Call an ambulance quick! There has been an accident;" "He is hurt badly"; and again, "Call an ambulance." As she tried to call the ambulance he paced, flailed his arms, and mumbled, "Oh, God! Oh God! He has been hurt;" "It was an accident. How could this happen? Oh, God! Oh, God." He made her so nervous she sent him into the other room while she dialed for help. He continued to pace, then said he had to go back to the house because James [the eye-

witness] was still there. Within less than a minute after leaving, as she waited by the telephone, he returned to her house, saying that Farrell had left. Distraught, he said, "I told him to stay and he didn't stay." Still flailing his arms, he repeated, "Oh, God! Oh, God! How did this happen? It was an accident;" and then, "Call my mom."

Fearing his elderly grandfather would see the victim and have a heart attack and die, appellant again ran down the driveway back to his house. All the way down the driveway she heard him wailing, "Oh, God! Oh, God! Oh, God!" He returned to Mary Regot's house a third time where he stayed until his mother arrived.

According to Mrs. Regot, appellant's first visit to her house lasted about three minutes, then he left for about one minute, returned and stayed for about two minutes, left again for about three minutes, and then remained with her until his mother's arrival three to five minutes later. The total time elapsed from the shooting to his mother's arrival was approximately fifteen minutes.

After hearing the proffered testimony, the trial court ruled appellant's statements constituted self-serving hearsay and were not part of the res gestae or excited utterances. Appellant then proceeded with his case, first introducing Mrs. Regot (where he scrupulously avoided any reference to the statements), followed by his own testimony.

Appellant now challenges the propriety of the trial court's ruling on the prosecution's motion in limine. Appellant argues the offer of proof established that his statements were spontaneous. He concludes the statements, as excited utterances, fall within the umbrella of the res gestae exception to the hearsay rule and should have been admitted. The State responds that the statements were not trustworthy and were studied attempts at exculpation. We hold that these statements were admissible under the "excited utterance" exception to the hearsay rule and were improperly excluded.

■ The "excited utterance" or "res gestae" exception to the hearsay rule permits the admission of a declarant's out-of-court statements made under the immediate and controlling domination of the senses produced by the stress of a startling event, as the true belief of the declarant unfiltered by his reflective faculties. *State v. Scott,* 716 S.W.2d 413, 415[1] (Mo.App. 1986). A statement made by a declarant, who has been subjected to a startling event, but who has not had an opportunity to fabricate, and which statement relates to the circumstances of the event is admissible. *Id.* [2]. The criterion for admission of a statement as "res gestae" or an excited utterance is not the time nor place of the utterance but rather the circumstances surrounding the utterance indicating its trustworthiness. *Id.* [3].

The utterances at issue here were made by a sixteen year old youth within minutes of a fatal shooting. Appellant ran almost immediately to the nearest telephone for assistance. Arriving at his neighbor's home, he was breathless and visibly overwrought when he asked Mary Regot to call an ambulance.

■ It is recognized that utterances made under stressful circumstances and relating to the event producing the stress have sufficient reliability to require that they be considered by the trier of the fact, rather than being excluded at the threshold by the trial judge. *State v. Williams,* 673 S.W.2d 32, 34[1] (Mo. banc 1984).

■ The trial judge has a measure of discretion and does not have to admit studied attempts at exculpation but the question of admissibility is basically a question of law subject to appellate review. *Id.* at 35[4].

■ Although the trial court indicated appellant's defense of accident requires little time to formulate, utterances coming so soon after the shooting and demonstrative of appellant's intent, should be weighed by the jury rather than by the trial judge. *Accord State v. Williams,* 673 S.W.2d at 35. The length of time which had elapsed here was not significant. As noted in *Williams,* a declaration may meet the "excited utterance" test even though made several minutes after the event giving rise

**586**

to the excitement, if the excitement persists. *Id.* [6]. The proponent of evidence does not have to show that the evidence is without flaw, or that the jury could not find it to be reflective rather than spontaneous, if it meets the general standards for admissibility.

■ Consideration of the entire circumstances surrounding the utterances here sufficiently indicated their trustworthiness so that the statement should have been admitted. Thus, the trial court's assessment that the defense of accident is readily conceived interposed the domain of the jury. It was properly a function for the jury to determine whether appellant's statements were reflective rather than spontaneous. *Accord Williams,* 673 S.W.2d at 35[5].

The judgment is reversed and the case is remanded for new trial.

SATZ, P.J., and CRIST, J., concur.