STATE of Missouri, Respondent,

v.

Monte Lane STOTTLEMYRE,
Appellant.

No. WD 39481.

Missouri Court of Appeals,
Western District.

April 19, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1988.

Application to Transfer Denied
July 26, 1988.

---

4.  The Industrials have filed a motion to strike portions of the Commission's reply brief. The   motion is denied.

Roy W. Brown (argued), James R. Brown, Kearney, for appellant.

William L. Webster, Atty. Gen., Karen A. King (argued), Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and LOWENSTEIN and CLARK, JJ.

NUGENT, Presiding Judge.

Defendant Monte Lane Stottlemyre was convicted after a jury trial of involuntary manslaughter in violation of § 565.024,[1] and sentenced to one year. We affirm.

On June 1, 1986, at about 10:30 p.m., defendant was driving his motorcycle back and forth across the dam at Smithville Lake. Michael Quincy was a passenger on the motorcycle; neither man was wearing a helmet. No street lights are near the dam, and the motorcycle had no headlights.

Charles Chappelow was fishing below the dam and testified that he heard the motorcycle "revving very high." Defendant lost control of the bike, and it struck a guardrail on the east side of the road, slid across the road and struck a guardrail on the opposite side before coming to rest beneath the guardrail.

Mr. Chappelow was the first to arrive at the accident scene. He noticed a "very strong smell" of alcohol when defendant, scraped and bleeding slightly, approached him. Defendant stated, "My God! ... I didn't have any eye protection and they're gonna hang me." He also told Mr. Chappelow that another person was on the motorcycle. Mr. Chappelow found Mr. Quincy's body and realized that he was dead.[2] Mr. Chappelow telephoned for the police and an ambulance. When Mr. Chappelow returned, he noticed that Mr. Stottlemyre was talking with a woman and laughing.

Trooper Leavene arrived about ten minutes after the accident, and defendant immediately approached him and said, "It's not my fault. Quincy grabbed the handlebar and put his foot down causing me to lose control of it."

When paramedic Darla Huber arrived, she also smelled alcohol on defendant's breath. Mr. Stottlemyre was transported to Spelman Hospital where Cheryl Hoe, a registered nurse on duty in the emergency room, treated him. Ms. Hoe testified that defendant was uncooperative and smelled of alcohol. Likewise, Officer Paul Vesco, who also observed defendant at the hospital, smelled alcohol.

Defendant consented to a blood test, but when the technician arrived, he refused to allow his blood to be drawn. After consulting with the prosecutor, Trooper Leavene read defendant his rights under *Miranda* and again requested a blood sample. Defendant refused, and the trooper placed him under arrest. Trooper Leavene then obtained a search warrant. After he got

---

1. All sectional references are to Revised Statutes of Missouri, 1986.

2. Mr. Quincy's body was on the rocks on the dam's enbankment. The evidence indicated that his body struck the guardrail fifty to sixty feet from where it was found. His chest had been impaled by a support post and his heart was found thirty feet from his body.

the warrant, a blood sample was taken by Norman Foster, a medical technician. Foster testified that defendant was uncooperative and his speech was slurred.

The two vials of blood were tested at the Missouri State Highway Patrol laboratory and showed a blood alcohol level of .15 percent.

Defendant raises three points on appeal: First, that the trial court erred in refusing to suppress evidence of defendant's blood alcohol content because defendant's blood was taken over his objection and after a search warrant was obtained even though § 577.041.1 [3] states that if a person under arrest refuses a blood test, no test shall be given, and because at that time the state had not complied with its obligation to promulgate rules and regulations in connection with proper procedures for analyzing blood for its alcohol content. Next, defendant complains that the trial court erred in refusing to allow Trooper Leavene to testify that defendant made an exculpatory statement within a few minutes of the accident. Finally he asserts that the trial court erred in overruling defendant's motion for judgment of acquittal because the evidence was not sufficient to make a submissible case or to convince a rational trier of fact that the defendant was guilty beyond a reasonable doubt.

I.

■ Relying on *State v. Ikerman*, 698 S.W.2d 902 (Mo.App.1985), defendant contends that a search warrant cannot overcome his right to refuse a blood test in connection with an alcohol related violation under § 577.041.1.

Defendant's argument is completely untenable. Section 577.041 applies to traffic offenses, but defendant was not charged with a traffic offense. He was charged with involuntary manslaughter, and now he urges an application of the statute that reaches far beyond its intent and purpose. *State v. Harris*, 670 S.W.2d 73, 78–79 (Mo. App.1984).

In the present case defendant was arrested, and then Trooper Leavene sought and obtained a valid search warrant. Probable cause existed—several witnesses testified that they smelled alcohol on defendant and that he was uncooperative and hostile; Trooper Leavene gave him two verbal tests for the presence of alcohol, and defendant twice could not recite the alphabet; defendant had been driving the motorcycle at the time of the accident; he admitted that he had had "a couple of beers"; Mr. Chappelow testified that he heard a motorcycle being driven back and forth across the dam at a high rate of speed; the motorcycle had no headlights, and Michael Quincy was dead. A judicial officer found probable cause and issued a warrant for a search and seizure. Trooper Leavene then returned to the hospital with a warrant and had the blood sample taken by a qualified technician in his presence. Trooper Leavene was exemplary in his procedures. At no time were defendant's rights ignored or trampled.

■ Defendant also contends that the state had not complied with its obligations to promulgate rules and regulations in connection with proper procedures for analyzing blood for its alcohol content. At trial, defendant did not object to the evidence of the results of the blood tests on that

**3.** Section 577.041.1 reads as follows:

If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given. In this event, the arresting officer, if he so believes, shall make a sworn report to the director of revenue that he has reasonable grounds to believe that the arrested person was driving a motor vehicle while in an intoxicated condition and that, on his request, refused to submit to the test. Upon receipt of the officer's report, the director shall revoke the license of the person refusing to take the test for a period of one year; or if the person arrested be a nonresident, his operating permit or privilege shall be revoked for one year; or if the person is a resident without a license or permit to operate a motor vehicle in this state, an order shall be issued denying the person the issuance of a license or permit for a period of one year.

ground. Because defendant did not properly preserve this issue for appellate review, we have reviewed it under the plain error rule. We find no reversible error, plain or otherwise.

## II.

■ In his second point defendant argues that the trial court erred and abused its discretion in refusing to allow Trooper Leavene to testify that defendant made an exculpatory statement within minutes of the accident. Defendant contends that his statement comes within the excited utterance exception to the hearsay rule and, therefore, should have been admitted. The criterion for admission of a statement as an excited utterance is that the circumstances surrounding the utterance must indicate that it is trustworthy. *State v. Boyd*, 669 S.W.2d 232, 234 (Mo.App.1984). An important factor in determining admissibility is whether the speaker has had the opportunity to fabricate the statement. *State v. Boyland*, 728 S.W.2d 583, 585 (Mo.App. 1987).

In this case the accident occurred at approximately 10:45 p.m. Mr. Chappelow testified that the defendant appeared to be in a "bit of shock" and was scraped and bleeding lightly. The defendant told Mr. Chappelow that someone else was on the back of the bike and later said, "My God ... I didn't have any eye protection and they're gonna hang me." Mr. Chappelow responded, "That's the least of your problems." Mr. Chappelow called the police. While waiting, he observed Mr. Stottlemyre standing to one side, talking with a woman and laughing. The defendant was treated by the paramedic. When Trooper Leavene arrived, the defendant immediately approached him and said, "It's not my fault. Quincy grabbed the handlebar and put his foot down causing me to lose control of it." From the record, it appears that about ten minutes had elapsed. Mr. Stottlemyre had made no other exculpatory statements to anyone present. He had indicated that he realized that he was in potential trouble with the police. His injuries were not severe; he was up, walking around and talking.

Defendant relies on *State v. Williams*, 673 S.W.2d 32 (Mo.1984) (en banc), (*Williams I*) and *State v. Boyland, supra.* Both cases are distinguishable on their facts from the present case. In *Williams I*, the excluded declarations were made within fifteen seconds of the event. In *Boyland* the exculpatory statements were made almost immediately after the event. In *State v. Williams*, 716 S.W.2d 452 (Mo. App.1986), the defendant made another excluded exculpatory statement to an ambulance driver fifteen or twenty minutes after the shooting. The court concluded that the trial court did not err in refusing to admit the statement because the defendant had had ample time to fabricate the statement and so the excited utterance exception did not apply.

In this case Mr. Stottlemyre obviously knew that he was in potential trouble with the police. The inference is clear that he had reason to exculpate himself and enough time to fabricate a statement. He made no other exculpatory statements to any of the people who arrived before Trooper Leavene, and the facts do not indicate that he was under such stress as would make his later statement an excited utterance. In light of such evidence, the trial court did not abuse its discretion in refusing to admit his declaration to Trooper Leavene as an exception to the hearsay rule.

## III.

Defendant's last point is that the trial court erred in overruling his motion for judgment of acquittal because the evidence was not sufficient to make a submissible case or to convince a rational trier of fact that defendant was guilty beyond a reasonable doubt.

Whether sufficient evidence exists to submit the case to the jury is a question of law to be decided by the trial court. Submission is warranted when the substantial evidence tends to prove each element. *State v. Craig*, 642 S.W.2d 98, 101 (Mo. 1982) (en banc). In reviewing the evidence we must accept as true all evidence and

inferences tending to support the verdict and disregard all evidence and inferences to the contrary. We may not substitute our judgment for that of the jury. Our function is to determine whether the evidence, considered in the light most favorable to the state, is sufficient to support the verdict. *State v. Strickland,* 609 S.W. 2d 392, 395 (Mo.1980) (en banc).

Defendant was convicted of involuntary manslaughter. § 565.024.1(2) provides that

1. A person commits the crime of involuntary manslaughter if he:

. . . .

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person.

■ Defendant's blood sample was taken at 2:37 a.m. He had .15 percent alcohol level at that time. Medical testimony was presented that defendant's level of intoxication would have diminished over time and that, therefore, defendant's intoxication at the time of the accident, approximately four hours before the taking of the blood specimen, would have been higher. That evidence alone would be sufficient to demonstrate intoxication; however, substantial evidence exists in this case in addition to the blood test to establish that appellant was intoxicated at the time of the accident. When Mr. Chappelow arrived on the scene immediately after the accident, he noticed a "very strong" smell of alcohol on defendant. Paramedic Darla Huber, who arrived on the scene at 10:57 p.m., smelled alcohol on defendant's breath. Hospital personnel described defendant as uncooperative, speaking with slurred speech and smelling of alcohol. Officer Paul Vesco who observed defendant at the hospital, noted the odor of alcohol on defendant's breath. In addition, Officer Leavene conducted a sobriety test at the hospital. The defendant twice was unable to recite the alphabet. This evidence is more than sufficient to establish the element of intoxication as required in involuntary manslaughter.

Sufficient evidence also exists to show that defendant was criminally negligent in his operation of the motorcycle. Not only was defendant driving while intoxicated, but he also was driving on an "extremely dark" road with no headlights. Mr. Chappelow said that defendant was "overrevving" his engine and driving back and forth across the dam. Further, the nature of decedent's injuries as well as the scattering of debris following the accident tends to indicate that the impact occurred at a high rate of speed. In addition, scratch marks on the road and the position of the motorcycle following the accident indicate that defendant had crossed over and was traveling on the wrong side of the road. Such evidence is sufficient to demonstrate that appellant operated his motorcycle with criminal negligence on the night of the accident.

Because the evidence and the reasonable inferences from it viewed in the light most favorable to the state support both of the necessary elements of a finding of involuntary manslaughter, the trial court did not err in submitting this case to the jury.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.