**STATE of Missouri, Respondent,**

v.

**Douglas T. YATES and Danny Jackson, Appellants.**

**No. WD 54344.**

Missouri Court of Appeals, Western District.

Dec. 15, 1998.

Kevin L. Jamison, Kansas City, MO, for Appellants.

David B. Parman, Prosecuting Attorney, Grant City, MO, for Respondent.

Before SMART, P.J., ELLIS and HOWARD, JJ.

HOWARD, Judge.

Douglas T. Yates and Danny Jackson were both convicted of the transfer of a conceala-

ble firearm without a permit, § 571.080, RSMo 1994, and Yates was also convicted of the unlawful use of a weapon, § 571.030, RSMo Supp.1995. On appeal, Yates and Jackson claim numerous instances of error by the trial court, and Yates contends that the convenience store into which he carried a firearm was not a "public assemblage" for the purposes of § 571.030.1(8).

Yates' conviction of unlawfully using a firearm is reversed, and Yates' and Jackson's convictions of transferring a concealable firearm without a permit are affirmed.

On the evening of October 15, 1996, Yates went into Casey's General Store, a convenience store in Grant City, Missouri. He purchased three packs of cigarettes, and during the transaction, the store clerk noticed that Yates was carrying a handgun in a shoulder holster. The weapon was in plain sight, and Yates did not remove it from the holster, or make any remarks or threats about having a gun.

After Yates left, the sheriff's department was informed of the incident, and Deputy Terry Sheddrick went to talk to Yates at his home. Deputy Sheddrick asked Yates if the gun was registered in his name, and Yates replied that it was registered in Jackson's name. A check of the records in the Worth County sheriff's office revealed that a permit to acquire a concealable firearm had been issued to Jackson but not to Yates.

On October 22, 1996, Jackson went to the sheriff's office to see Deputy Sheddrick, and told him that he had loaned the gun to Yates to use for target practice. Both Jackson and Yates were arrested for transferring the weapon without a permit, and Yates was arrested for unlawfully using the weapon by carrying it into a public assemblage. Following a jury trial, both men were convicted of all charges, and Jackson and Yates were each fined $50.00 for transferring the gun without a permit, and Yates was given a five-day jail sentence and a fine of $100.00 for unlawful use of the weapon.

■ The verdicts in this case were returned on March 27, 1997, and Yates' and Jackson's motion for a new trial was filed thirty-three days later, on April 29, 1997.

Rule 29.11(b) provides that a defendant must file a motion for a new trial within fifteen days after the return of the verdict. In addition, Rule 29.11(b) provides that, if the defendant applies for an extension of time within fifteen days after the return of the verdict, the court may extend the time for filing the motion for one additional ten-day period. The time limitations in Rule 29.11 are mandatory. *State v. Jones,* 643 S.W.2d 34, 36 (Mo.App. E.D.1982).

■ In the case at bar, Yates and Jackson did not apply for an extension of time within the fifteen-day deadline; therefore, the trial court was without authority to extend the deadline at all. Rule 20.01(b); *State v. Smith,* 527 S.W.2d 455, 456 (Mo.App. S.D. 1975). Even if Yates and Jackson had timely applied for an extension, the trial court was without authority to extend the deadline beyond an additional ten days, i.e., to twenty-five days after the return of the verdict. *State v. Brown,* 615 S.W.2d 626, 626–627 (Mo.App. S.D.1981). Because Yates and Jackson did not file their motion for a new trial within the maximum time period allowed by rule, the motion preserves nothing for appellate review, and we consider the cause only as to issues deemed plain error. *State v. West,* 629 S.W.2d 429, 432 (Mo.App. W.D. 1981).

■ On appeal from his conviction of unlawfully using a weapon, Yates claims that the retail establishment in which he carried a firearm, Casey's General Store, was not a "public assemblage" for the purpose of § 571.030.1(8), and therefore he did not violate that criminal statute.

Section 571.030.1(8) provides that a person commits the crime of unlawful use of a weapon if he knowingly:

> [c]arries a firearm or any other weapon capable of lethal use into any church or place where people have assembled for worship, or into any school, or into any election precinct on any election day, or into any building owned or occupied by any agency of the federal government, state government, or political subdivision thereof, or into any public assemblage of persons met for any lawful purpose.

A review of the case law reveals that, in previous prosecutions under earlier versions of this statutory provision, defendants have been convicted for carrying a weapon to a pie supper at a schoolhouse, *State v. Loahmann*, 58 S.W.2d 309, 310 (Mo.1933), and into a church house where a school exhibition was taking place. *State v. Wilforth*, 74 Mo. 528, 529 (Mo.1881). In other jurisdictions, similar statutes have led to convictions for carrying a weapon to a dance hall, *Spears v. State*, 44 Okla.Crim. 406, 281 P. 167 (Ok.App.1929); and to a public barbeque with over four hundred people present, *Wynne v. State*, 123 Ga. 566, 51 S.E. 636 (Ga.1905).

■ There is no Missouri law—either in the criminal statutes or in the published cases—that explicitly defines what constitutes a "public assemblage" for the purposes of this subsection. However, the language of the subsection makes it clear that the law is designed to proscribe the carrying of a weapon where people have gathered for religious, educational, political, civic, or social purposes, and that the emphasis of the subsection is on the gathering of people, and the effect thereon of the presence of a weapon, and not on the question of whether a place happens to be open to the public. It is this distinction between a "public gathering" and a "public place" which led the Georgia Court of Appeals to determine that the act of carrying a weapon into a McDonald's restaurant wasn't proscribed under a similar statute. *State v. Burns*, 200 Ga.App. 16, 406 S.E.2d 547, 547–548 (Ga.App.1991). This distinction was also noted in Annotation, *Offense of Carrying Weapon on Person as Affected by Place Where Defendant Was at the Time*, 73 A.L.R. 839, 843 (1931), which observed that, in those states which have passed statutes making it a distinct offense to carry weapons at a public gathering, such statutes "have been held to apply only when a person has carried a weapon at an actual assembly of people, the public nature of the place being immaterial."

Applying these principles to the case at bar, a convenience store with two clerks on duty and no other customers present does not constitute a "public assemblage" for the purposes of § 571.030.1(8). Consequently,

Yates' conviction for unlawful use of a weapon must be reversed. Because we are reversing Yates' conviction on this count, we need not address his claim that there was insufficient evidence that he unlawfully used a weapon because the prosecution failed to prove that the gun was loaded.

■ On appeal from their convictions of transferring a concealable firearm without a permit, Yates and Jackson claim that the trial court plainly erred by allowing the prosecutor to refer, during closing argument, to their failure to testify.

During the initial portion of his closing argument, the prosecutor argued that

it might be argued or suggested that there's no evidence that the transferring of this weapon from Defendant Jackson to Defendant Yates occurred in Worth County. And, granted, there has been no evidence that that transfer actually took place within the physical confines of Worth County. However, you heard a minute ago the Judge talking about the evidence and the reasonable inferences to be drawn therefrom. And that's going to be one of the instructions that you're going to have to take back to the jury room with you.

There are certainly a strong—I would suggest a strong presumption, a strong inference where the defendants both reside here in Worth County, where this—where this gun was found to be in possession of Defendant Yates here in Worth County, that there's a strong presumption that that transfer took place here in Worth County. Nobody's testified that the transfer took place in the State of Alaska, the State of Hawaii or anywhere else. No evidence whatsoever to suggest that that transfer took place outside the physical confines of Worth County.

It's also—well, and back on that, you didn't see me put my pants on this morning; but you know I live here in Worth County; and I've got my pants on. A very strong inference there that I put my pants on this morning here in Worth County. The jacket, the tie, everything else, a very strong inference of that. And you're entitled to take that into account and make

that inference, even though there is no direct evidence of it.

Defense counsel later gave his closing argument, and he responded to the prosecutor's argument by saying:

As to the transfer of the gun, the alleged transfer, now this—the indictment says a transfer in Worth County without a government permit. All right. The government has to prove each element of that. The first element is the transfer happened in Worth County. What proof is there it happened in Worth County?

. . .

Well, there isn't any. Nobody saw it happen, so you're asked to infer. You're asked to guess, cause some of us put our pants on in Clay County and came to Worth County. People move around. They go to Maryville for entertainment. They go to St. Joseph. We go to shooting places in Iowa. I came up here from Kansas City.

At what point is there any evidence that you can even make an inference that this happened in Worth County, because these guys live here? Actually, there isn't evidence that Mr. Jackson lives in Worth County; but leaving that, the gun was found in Worth County? Possession of the gun is not a crime. The transfer itself is a crime.

What elements of the transfer can be directly traced to Worth County? Even to be an inference, just that it was found here—but I've got guns in Clay County that I bought in Jackson County and Cass County and Ray County. So just because it's here, the prosecution wants you to guess where the transaction took place instead of bothering to put on evidence.

Then, on rebuttal, the prosecutor said:

Well, folks, [defense counsel is] right. I didn't present any evidence that this transfer occurred in Worth County. You know why? Because the only two people in the world that know where this transfer took place are sitting right there.

Defense counsel objected that the prosecutor's remarks constituted an impermissible reference to the defendants' failure to testify,

but the trial court overruled his objection. The prosecutor then continued:

The only two folks that know are these two folks right here, these defendants. Nobody's been on the witness stand on their behalf and swore to tell the truth, the whole truth and nothing but the truth and said that this transfer happened in Ringgold County, Iowa or Harrison County, Missouri or Nodaway County or somewhere other than Worth County. You can bet if they had that evidence—

Defense counsel again objected, and his objection was overruled by the trial court.

■ A prosecutor may not directly comment on a defendant's failure to testify by using the words "defendant" or "accused" and "testify" or their equivalents. *State v. Nelson,* 719 S.W.2d 13, 16–17 (Mo.App. W.D. 1986). In addition, a prosecutor may not indirectly comment on a defendant's failure to testify, and the test for such an indirect reference is that

the comment must be the type that, when viewed in context, would cause the jury to infer that the remark referred to the accused's failure to testify. . . . The ultimate question is whether the remark drew the jury's attention to the lack of testimony by defendant.

*Id.* at p. 17.

The Missouri Supreme Court, in *State v. Williams,* 673 S.W.2d 32, 35 (Mo. banc 1984), offered an example of the kind of remark that constitutes an impermissible indirect reference to a defendant's failure to testify. In that case, the prosecutor made the following remarks during closing argument:

Let me stop right there. Now ladies and gentlemen, there is no eyewitness as to what happened in that bathroom that the State can produce for you today. There's only two people back there that knows exactly what happened and can tell you—who knows exactly what happened back there.

Although *Williams* was reversed on other grounds, The Missouri Supreme Court declared: "We have no hesitation in saying that this argument contains an improper refer-

ence to the defendant's failure to give testimony." 673 S.W.2d at 35.

In the case at bar, the quoted portion of the prosecutor's rebuttal includes remarks that are similar to those made by the prosecutor in *Williams* ; however, the question remains whether the trial court's allowance of these remarks constitutes plain error mandating reversal in this case. Although a direct reference to a defendant's decision to not testify will almost invariably require reversal of the conviction, *State v. Lawhorn,* 762 S.W.2d 820, 826 (Mo. banc 1988), an indirect reference will require reversal on plain error only if there is a "calculated intent" demonstrated by the prosecutor to magnify that decision so as to call it to the jury's attention. *State v. Wood,* 719 S.W.2d 756, 761 (Mo. banc 1986).

When placed in context, the remarks complained of in the case at bar came at the end of a lengthy give-and-take on the issue of whether it was reasonable to infer that the transfer took place in Worth County. The prosecutor's remarks appear to be a response prompted by the preceding argument rather than motivated by a "calculated intent" to magnify the defendants' choice to not testify.

Also, errors committed in closing argument do not merit plain error relief unless they are determined to have had a decisive effect on the jury. *State v. Clifford,* 815 S.W.2d 3, 8 (Mo.App. W.D.1991). Here, the decisive thrust of the prosecutor's closing argument on the issue of where the transfer occurred was his argument that the jury could reasonably infer that it took place in Worth County, not his indirect reference to the defendants' failure to testify.

We also conclude that Yates' and Jackson's other various claims of trial error do not merit plain error relief. Yates' conviction of unlawfully using a weapon is reversed, and Yates' and Jackson's convictions of transferring a concealable firearm without a permit are affirmed.

All concur.