**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Jack E. KOHSER, Defendant–Appellant.**

**No. 23707.**

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 2001.

Motion for Rehearing and Transfer
Denied May 21, 2001.

Application for Transfer Denied
June 26, 2001.

Tyce S. Smith, Waynesville, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.

SHRUM, Judge.

Jack E. Kohser ("Defendant") appeals his conviction of second-degree murder under § 565.021.[1] After a bench trial, the court sentenced Defendant to twenty-five years' imprisonment for his role in the murder of Billie Joe Baker ("Victim"). On appeal, Defendant asserts various claims of trial court error regarding lack of notice of the crime for which he was convicted and insufficient evidence to support the conviction. We find no error. We affirm.

## STATEMENT OF FACTS

Sometime in 1996, Defendant became friends with Shane Duncan ("Duncan"), Aric Dotson ("Aric"), and Julia Givens ("Givens"). Defendant was a high school drop-out who held various jobs for a "couple of months" at a time, and he was "basically still living off [his] parents," residing in their basement at the time of the crime. Duncan "just sort of showed up" and began living at Defendant's parents' home as well. The four friends frequently "hung out" in the basement during the day, and sometime in November of 1996, a scheme was devised in which the four would rob Victim, who was Givens' uncle.

On November 14, the plan came to fruition when the group drove to Victim's home in Salem, Missouri, in Defendant's mother's car. Givens had lived with Victim for a period and knew he kept a safe in the home. Givens told the three friends the safe held "seventy some thousand dollars." Initially, the plan was for Givens to lure Victim away from his house, and then Defendant, Duncan, and Dotson were to break in and steal the safe. This scheme was abandoned because Givens did not feel comfortable being alone with her uncle. The group's next contrivance was to break into the house when Victim was not there and take the safe. Their attempts to enter the house were unsuccessful, and the four went back to Defendant's home in Rolla, Missouri.

Later that afternoon, the foursome "got high again and then [they] did some cocaine." At this point, the group hatched the third plot to accomplish their sinister goal. The testimony at trial differed regarding the details of this plan. Givens testified the plan was to rob Victim, then kill him and bury him in the woods. Her memory was unclear because she was using marijuana, PCP, heroin, and cocaine at the time. She testified the group obtained shovels to bury Victim and a hammer to kill victim from Defendant's shed. Defendant and Dotson testified there were no shovels because the foursome had never intended to kill Victim. They testified their plan was to knock Victim unconscious and take the safe. The testimony from each regarding the use of a hammer to hit Victim in the head was uncontradicted. A small hammer, eight inches in length with a metal head approximately the size of a soda can, used to break rock, was obtained from Defendant's shed. This was to be used to hit Victim over the head.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Defendant drove the group to Salem and parked at a church near Victim's house. They told Victim they had car trouble, and Victim let them into the house. As the group and Victim were sitting in the living room watching television, Duncan stood up, crushed out his cigarette, and hit Victim over the head with the hammer. Victim was hit at least twelve times in the head by either Duncan or Dotson, or both. The safe was taken from the house, and Victim was left on the couch in the living room. The group then took Victim's car and drove to St. Louis. They also took Defendant's mother's car. Upon reaching St. Louis, they abandoned Victim's car. Givens testified that during this trip Defendant repeatedly played a "gangster rap" song by "Snoop Dog" containing lyrics about murder, and then "turned his hat a certain way" as a "gangster's way of expressing himself" to represent he had participated in a murder.

After abandoning Victim's car in St. Louis, the group returned to Defendant's home in Rolla. The safe was then unloaded into Defendant's shed where it was opened and the money split between Defendant, Duncan, and Dotson. Later, the safe was thrown into a river. Found in Defendant's closet were two guns stolen from Victim, and papers previously kept in the safe. All four were arrested and charged with first-degree murder. Defendant, who was tried separately, waived his right to a jury trial, and the court found him guilty of second-degree murder.

 Defendant concedes in his brief that his motion for new trial was not timely filed as prescribed by Rule 29.11.[2] The time limitations contained in that rule are mandatory. *State v. Yates*, 982 S.W.2d 767, 769[2] (Mo.App.1998). Failure to follow the time prescriptions results in the motion preserving nothing for appellate review, and we can consider the cause only as to issues deemed plain error. *Id.* at 769[1].

 Rule 30.20 (2001) describes the appropriate standard of review in criminal cases involving plain error: "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Relief under the rule will only be granted if a defendant can show the action of the trial court was not only erroneous, but also the error so substantially impacted his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected. *State v. Smith*, 979 S.W.2d 215, 217[1] (Mo.App. 1998). Plain errors are those which are evident, obvious, and clear. *State v. Scurlock*, 998 S.W.2d 578, 586[8] (Mo.App. 1999). Appellate courts' discretion to reverse a conviction based on the plain error rule should be used sparingly. *State v. Santillan*, 1 S.W.3d 572, 578[4] (Mo.App. 1999).

***POINT I: "NOTICE" OR "REQUEST"—SECOND-DEGREE MURDER SUBMISSION***

Defendant's first point on appeal maintains:

> "The trial court erred in convicting ... of second degree murder because [Defendant] *was not given notice* of the lesser included offenses [of first degree] *as neither the parties or the court requested* that the court consider second degree murder conventional or ... felony as a lesser included offense...."

Turning to the argument section of his brief, the essence of his claim is that he did not have *notice* that he could be con-

___

**2.** All rule references are to Supreme Court Rules (1999), unless otherwise indicated.

victed of a lesser homicide because no *request* was made by the state, Defendant, or the court to have the court consider conviction on the lesser offense. Defendant premises this argument on two statutes: §§ 565.025.3 and 565.021.3. In pertinent part, § 565.025.3 provides that "[n]o instruction on a lesser included offense shall be submitted unless *requested by one of the parties or the court.*" (Emphasis supplied.) Similar language is found in § 565.021.3 as follows:

"[I]n any charge of murder in the second degree, the jury shall be instructed on, or, in a jury-waived trial, the judge shall consider, any and all subdivisions in subsection 1 [provisions for conventional and felony second degree murder] of this section which are supported by the evidence and *requested by one of the parties or the court.*" (Emphasis supplied.)

Defendant interprets the italicized *request* language to mean that an accused could never be convicted of a lesser homicide unless a proper request was made by a party or the court. Apparently, Defendant views the *request* contemplated by the statutes as a prerequisite to adequate notice. We disagree.

■ The purpose of the request for a second-degree murder submission under the statutes cited is not to give Defendant *notice* of the crime charged. If a *request* for a second-degree submission was designed to give an accused notice of the second-degree submission, the request would have to be made before any evidence was adduced. This follows because the purpose of notice is to allow a defendant time to prepare an adequate defense. *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo.1992); *State v. Mace,* 357 S.W.2d 923, 925[3] (Mo.1962). Defendant's analysis is not only illogical and unworkable, but is

contradicted by the plain language of § 565.021.3. The statute provides that a judge shall consider the subdivisions of subsection 1 *"which are supported by the evidence."* (Emphasis supplied.) This italicized language from § 565.021.3 merely suggests the obvious, namely, neither the state nor an accused could make an informed request for a second-degree murder submission until all evidence had been adduced. Similarly, a trial court could never make an informed decision to submit second degree on its own motion until all evidence had been presented. On the other hand, *notice* of the possibility of such a submission could only be meaningful for an accused if the notice came before trial so the accused could prepare.

■ Similarly, we note that the requirement for a request under § 565 .025.3 has nothing to do with notice. This statute was enacted to change the rule of "automatic submission" of lesser homicide offenses announced in *State v. Stapleton,* 518 S.W.2d 292 (Mo.banc 1975); *State v. Stribling,* 721 S.W.2d 48, 50[1] (Mo.App.1986). "Trial courts are not obligated to instruct on lesser-included offenses *unless* there is a basis [in the evidence] for the jury to: 1) acquit the defendant of the offense charged, and 2) convict the defendant of the included offense." *State v. Hibler,* 5 S.W.3d 147, 148 (Mo.banc 1999); § 556.046 (emphasis supplied).

■ An examination of the relevant Notes on Use for MAI–CR3d. 313.00 shows that the court here acted properly. Specifically, Note 4 states the instruction for felony-second-degree murder will be given if proper notice was given by the state, *justified by the evidence,* and "if requested by one of the parties or *on the Court's own motion."* [3] (Emphasis sup-

---

**3.** MAI–CR–313.00.3 provides the same for conventional second-degree murder except

plied.) The "on the court's own motion" language "merely absolves the trial court from any error, should it determine that the evidence justifies the instruction and decide to give the instruction on its own." *State v. Cole,* 753 S.W.2d 39, 41 (Mo.App. 1988). After examining the record, the trial court here implicitly found there was a basis to acquit Defendant of first-degree murder, and convict him of second-degree murder. Although the trial court apparently acted upon its own motion, that was its prerogative under the statutes. The fact that the court did not affirmatively announce to Defendant that it intended to consider murder in the second degree, either conventional or felony, is of no consequence.

■■■■■ The trial court's failure to state in its judgment if Defendant was convicted of felony or conventional second-degree murder is also irrelevant in analyzing Defendant's notice claim. Defendant was charged with first-degree murder. "Due process requires that a defendant may not be convicted of an offense not charged in the information or indictment. Every information or indictment puts the defendant on notice, for due process purposes, of all offenses included in the offense charged." *Hibler,* 5 S.W.3d at 150 (citations omitted); § 556.046. Conventional second-degree murder is a lesser-included offense of first-degree murder. *State v. Kinder,* 942 S.W.2d 313, 330 (Mo.banc 1996); § 565.025. Therefore, Defendant had notice that he could be convicted of conventional second-degree murder.

Defendant acknowledges this rule of law, but argues that without a *request* this rule is inapplicable. Defendant is simply wrong in this assertion. As we have already explained, a request and notice are

that no additional notice be given other than a charge of first degree murder in the original

separate concepts. Defendant was put on notice of a possible conventional second-degree murder conviction when he was charged with first-degree murder.

■■■■ If Defendant was convicted of felony-second-degree murder, then the record conclusively reveals he had notice of this possible conviction as well. On March 19, 1999, the state served Defendant a "Notice of Intention to Submit Murder 2nd-Felony." The language of the document tracked that required by MAI–CR–313.06, Notes on Use 7. The only thing omitted was the degree of the underlying felony. The document stated the charge would be "based on the perpetration of the felony of robbery." There was no objection filed with the court as to this document although Defendant received it approximately one month before trial. Without citation to authority, Defendant argues this notice "constitutionally fails" because it "failed to tell him what degree of robbery he was defending" against. Defendant does not explain nor can we discern why the lack of notice about the "degree of robbery" impaired his ability to prepare a defense against felony murder.

We are confirmed in this view by comments made by defense counsel during the trial. For instance in his opening remarks, Defendant's lawyer told the trial judge that Defendant's medical expert and a state psychiatrist had diagnosed Defendant as having a mental defect which "made it impossible for him to perform[sic] any intent or planning or any knowledge that [Victim] would actually be struck and robbed, let alone killed." Continuing, defense counsel said: "[B]ased upon that testimony ... we believe there is no believable evidence of a plan to kill [Victim] and

indictment or information.

that [Defendant] could not form the mental intent or knowledge or purpose to support a murder two conviction." After both medical experts testified, defense counsel, *in his final summation to the trial court,* argued: "[I]n regards to the murder two, the state of mind is important and it is difficult for any rational person to put themselves into the state of mind of [Defendant]. I think it is clear that [Defendant] has an abnormal and irrational mind." Later, counsel argued, "the evidence is that [Defendant] has a mental abnormality. And the question for the court to decide is whether or not that made it impossible for him to form the necessary mental state of the—I'm not talking about murder one. I want to say there was no plot. There was no intent, but whether he can even form the mental state to have the intent to rob." On this record, we find it abundantly clear Defendant had sufficient notice of a possible second-degree felony-murder conviction (with robbery being the underlying felony) to prepare a defense. *See Blankenship,* 830 S.W.2d at 13 (holding the notice to which an accused is entitled when second-degree felony murder is an option as a lesser-degree offense to first-degree murder is such notice as will enable an accused to make his defense). We reject Defendant's argument to the contrary.

Defendant has wholly failed to show that *any* error occurred, plain or otherwise.[4] He has not met the heavy burden imposed on him under the plain error standard. No miscarriage of justice has resulted from Defendant's conviction of second-degree murder, whether it is as conventional or felony.[5] Point I is denied.

## POINT III: MURDER CONVICTION PRECLUDED BECAUSE OF MERGER THEORY?

 Defendant's third point raises the "merger" doctrine as grounds for saying the trial court erred in convicting him of second-degree felony murder.[6] The "merger" doctrine is a judicially-created means of limiting or barring the application of the felony-murder rule whenever the act causing the homicide is "indivisible from the act providing the basis for the underlying felony." *State v. Williams,* 24 S.W.3d 101, 109[1] (Mo.App.2000); *State v. Coody,* 867 S.W.2d 661, 664 n. 1 (Mo.App. 1993).

With the merger doctrine thus explained, Defendant insists there was insufficient evidence to convict him of second-degree felony murder "because the murder merged with the predicate crime of robbery which precluded by law the conviction of [Defendant] by the court of the charge of second degree murder-felony." We disagree.

With a single exception, Missouri courts have applied the merger doctrine to limit the felony-murder rule *only* when assault is the underlying felony. *State v. DeJournett,* 868 S.W.2d 527, 533 (Mo.App.1993). The single exception is *State v. Cook,* 560 S.W.2d 299 (Mo.App.1977), a case in which the underlying felony was exhibiting a deadly weapon in a "rude, angry and threatening manner ." *Id.* at 303–04.

---

**4.** At best, Defendant makes a claim that the failure to follow exactly the language of MAI–CR–313.06, Note 7, resulted in error. We need not decide that question as Defendant has wholly failed to show any prejudice, much less manifest injustice or miscarriage of justice.

**5.** Section 565.021 does not differentiate the punishment for second-degree murder. Second-degree murder is a Class A felony whether conviction is the result of subsection 1(1) (conventional) or subsection 1(2) (felony).

**6.** For purposes of Point III, Defendant assumes he was convicted of second-degree felony murder.

Even then, the merger doctrine was only discussed to explain the appellate court's conclusion that the trial court had found the accused guilty of conventional murder, not felony murder. Neither *Cook* nor the cases where assault was the underlying felony are authority for the proposition that the merger doctrine should be applied in Missouri where the underlying felony is robbery.

On the other hand, two Missouri cases conclude, after extended analysis, that the General Assembly has legislatively abrogated the merger doctrine in Missouri *unless* the underlying felony is murder or manslaughter. *Williams,* 24 S.W.3d at 117[16] (holding when legislature excluded only murder and manslaughter as predicate felonies for felony murder, it intended no other limitations be placed on the felony-murder offense, which includes no limitation by way of merger doctrine); *State v. Bouser,* 17 S.W.3d 130, 140 (Mo.App.1999) (holding if legislature intended to embrace the merger doctrine as a limitation on felony murder for any felony other than murder or manslaughter, it could easily have done so).

Our independent research has not turned up any Missouri case in which the merger doctrine was applied when the underlying felony was robbery. *See Williams,* 24 S.W.3d 101 (discussing history of merger doctrine). We do find that the purpose of the felony-murder rule, i.e., to deter those engaged in a felony from killing recklessly, negligently, or even entirely accidentally, is well served where, as here, the record shows these parties initially planned a crime of burglary and stealing but then went forth on a plan that encompassed robbery in the first degree. *Id.* Defendant cites no relevant authority and fails to advance any reasoned argument why we should expand the merger

doctrine—even if it were possible—in a case such as this where robbery was the underlying felony *and* Defendant was not convicted of the crime of robbery. We decline Defendant's suggestion that we do so. On this record, it is clear Defendant's conviction of second-degree felony murder did not result in manifest injustice or miscarriage of justice. Point III is denied.[7]

The judgment is affirmed.

PARRISH, P.J., Concurs.

MONTGOMERY, J., Concurs.

---

7. At oral argument Defendant withdrew Point II of his brief.