STATE of Missouri, Respondent,

v.

Elbert C. BOWLES, Appellant.

No. WD 56738.

Missouri Court of Appeals,
Western District.

June 13, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Andrew Allen Schroeder, Travis Poindexter, Appellate Public Defender Office, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris, Breck Burgess, Atty. Gen. Office, Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

Elbert C. Bowles appeals the circuit court's judgment convicting him of one count of burglary in the first degree and one count of stealing $150 or more. The jury acquitted Bowles of three other counts—burglary in the second degree, another count of stealing $150 or more and failure to appear. After finding Bowles to be a prior and persistent offender, the circuit court sentenced Bowles to consecutive prison terms of 30 years for burglary and 20 years for stealing.

Bowles complains that the circuit court erred by sentencing him to 20 years on the stealing charge, by overruling his request for a mistrial in response to a police officer's testifying that he found a crack pipe upon Bowles, by overruling his relevancy and hearsay objections to a police officer's testimony at the sentencing hearing, by

denying his request for a curative instruction in response to the state's closing argument, and by overruling his request for a mistrial in response to a question asked by the jury during deliberations. We affirm the circuit court's judgment in part and reverse and remand in part.

The evidence established that on the morning of June 14, 1998, a burglar broke into a Kansas City apartment occupied by Christine Malamanig, Lucy Her, and Caler Bowman. The burglar took a television, a video cassette recorder, a camera, a stereo, a microwave oven, a slide projector, a compact disc player and herbal teas. While the burglar was stealing the items, Malamanig slept in her bedroom. Malamanig awakened when the burglar opened her bedroom door. She jumped up and saw a man "pop in" and then "pop right back out" and ran down the hallway. Malamanig ran after him and followed him to the parking lot where she saw him get into the passenger side of a small, blue car.

As the car drove off, Malamanig ran after it. The car stopped at an intersection, and the passenger got out and looked toward Malamanig. Malamanig walked behind a parked car so the man could not see her. The man got back into the car, and the car drove away.

In the meantime, Kansas City police officers Tim Mouse and Lance Lenz were patrolling the area in response to a report of a suspicious light blue Honda Civic. They found the car in the area of Malamanig's apartment and began following it. When the blue car pulled over to the curb next to a truck, the officers radioed its tag number into the dispatcher and drove around the block waiting for a report. They learned that the tag number was registered to a flat-bed truck. When they returned to where the car had been parked, it was gone.

Malamanig saw the officers and flagged them down. She told them that she had just been burglarized, and she pointed down the road to a light blue car. The officers drove down the street, and, as they passed an apartment complex parking lot, they saw Bowles get out of a light blue car on the passenger's side and Pervon Burks get out on the driver's side. Bowles ran to the rear of the apartment building, and Burks ran inside the building.

The officers followed Burks into the apartment building. They left when they heard a door slam. While Mouse radioed for back up, Lenz walked behind the building and found Bowles. Lenz told Bowles to put his hands on the top of his head, but Bowles ran. Lenz and another officer, who had arrived to assist, ran after Bowles and caught him a block away. When they arrested and handcuffed Bowles, they saw two RCA remote controls sticking out of his back pocket. In the light blue Honda, officers saw a television and a video cassette recorder that matched the remotes that were in Bowles' pocket. They also found a camera, a stereo, a slide projector, a microwave oven, and herbal tea in the car. Malamanig identified the property as hers and her roommates'.

■ In his first point, Bowles contends that the circuit court erred by sentencing him to 20 years for stealing $150 or more. He claims that he was entitled to the benefit of the reduction in sentence because the General Assembly reclassified the offense of stealing by amending § 570.030, RSMo. Bowles acknowledges that he did not raise this claim during trial or at sentencing, but he requests that we review it for plain error pursuant to Rule 30.20.

■ Rule 30.20 authorizes us to consider errors which are "plain" if they affect substantial rights and if they result in "manifest injustice or miscarriage of justice." An error is plain if, on its face, we discern substantial grounds for believing that the error caused manifest injustice or a miscarriage of justice. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). Bowles' complaint facially establishes a substantial ground for

believing that he suffered a manifest injustice. Hence, we review the plain error to determine whether it, in fact, resulted in manifest injustice or a miscarriage of justice.

The state charged Bowles with stealing. Section 570.030.1, RSMo Supp.1997, which was in effect at the time Bowles committed the offense, defined the offense: "A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." The statute further provided that the penalty for stealing property with a value of $150 or more was a Class C felony. Section 570.030.3(1), RSMo Supp.1997. On August 28, 1998, the General Assembly amended § 570.030, to make misappropriating property having a value of $750 or more a Class C felony and to make misappropriating property having a value less than $750 a Class A misdemeanor. Sections 570.030.3 and 570.030.7, RSMo Supp.1998. The range of punishment for a Class A misdemeanor is a jail term not to exceed one year. Section 558.011.1(5), RSMo 1994.

Bowles contends that, because of the amendment to § 570.030, he was entitled a reduction in his sentence to one year. In support of his contention, he relies on § 1.160, RSMo 1994, which says:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except:

. . . .

(2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law.

When Bowles committed the offense, § 570.030.3(1), RSMo Supp.1997, made stealing property with a value of $150 or more a Class C felony. According to § 1.160, however, if the penalty for the offense was reduced or lessened by an amendment to the law creating the offense before sentencing, the penalty had to be assessed according to the amendment.

In Bowles' case, it is possible that the penalty would have been reduced by the amendment to § 570.030. The amendment made it a Class C felony to misappropriate property having a value of $750 or more and a Class A misdemeanor to misappropriate property having a value less than $750. Sections 570.030.3 and 570.030.7, RSMo Supp.1998. The court's instruction to the jury asked the jury to find beyond a reasonable doubt that "the property so taken had a combined value of at least one hundred fifty dollars."[1] It did not ask the jury to find that the property had a value of more than $750. While we agree with the state that the victim gave a range of values for the stolen property and that the high end of her estimates put the property's value over $750, the jury was not asked to make this factual determination. Indeed, the lower end of the victim's range of estimates put the value of the property under $750.

As a persistent offender, Bowles is not entitled to a jury recommendation as to sentence. A factual determination of the value of the property stolen, however, has to be made by the jury, as evidenced by MAI–CR 3d 324.02.1. We, therefore, remand the case to the circuit court for a resentencing hearing only.[2] At this hear-

---

1. This was consistent with the prior version of MAI–CR 3d 324.02.1.

2. Because we are remanding for resentencing, we need not address Bowles' contention on appeal that the circuit court erred by overruling his relevancy and hearsay objections to

ing, Bowles is entitled to have a jury make a finding on the value of the property. If the jury finds that the property's value was less than $750, the circuit court must reduce the penalty to a Class A misdemeanor and sentence accordingly.[3] If the jury finds that the property's value is over $750, the circuit court must assess the penalty as a Class C felony, and it may sentence Bowles as a persistent offender pursuant to § 558.016, RSMo 1994.[4] In mandating this procedure, we draw upon the teaching of *State v. Sumlin,* 820 S.W.2d 487, 494 (Mo. banc 1991).

In his next point, Bowles contends that the circuit court abused its discretion when it overruled his request for a mistrial after Officer Mouse volunteered that, when he arrested Bowles, he found a crack pipe on Bowles. Bowles asserts that this evidence constituted evidence of other crimes and bad acts and was prejudicial because it "injected into the proceeding the improper inference that [he] was a crack addict who

would do anything, including the commission of criminal acts, to feed his addiction."

■ Declaration of a mistrial is a drastic remedy which the circuit court should reserve for times when all other remedies are inadequate. *State v. Clemons,* 946 S.W.2d 206, 217 (Mo. banc), *cert. denied,* 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). Because the circuit court observes the testimony and its impact, we review only for an abuse of discretion. *State v. Parker,* 886 S.W.2d 908, 922 (Mo. banc 1994), *cert. denied,* 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995).

■ Bowles contends that the evidence of the crack pipe created a danger that the jury would believe that his drug addiction provided him with a motive for committing the charged offense. He is correct. Evidence of other crimes, however, is admissible when it tends to establish motive. *State v. Weaver,* 912 S.W.2d 499, 518 (Mo. banc 1995), *cert. denied,* 519 U.S.

---

a police officer's testimony at the sentencing hearing. We remind Bowles, however, that because the judge heard the evidence and sentenced Bowles, we presume that the judge did not consider improper evidence at sentencing. State v. Carter, 955 S.W.2d 548, 560 (Mo. banc 1997), *cert. denied,* 523 U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998).

3. The state relies on State v. Smith, 988 S.W.2d 71, 82 (Mo.App.1999), in support of its contention that the amendment to § 570.030.3(1) does not turn stealing $150 or more from a Class C felony into a misdemeanor. In that case, the state appealed the circuit court's order dismissing a prosecution for felony stealing on the ground that the state's opening statement was deficient. The defendant argued that, because the amendment to § 570.030.3(1) required a $750 minimum on the value of the stolen goods for a Class C felony and because the evidence established that the value of the stolen goods was $244.25, the appeal was moot. In response to the defendant's claim, this court said, "The change in the statute is irrelevant to this appeal. Even were we to assume that [the] $244.25 [value of the stolen goods] is correct, the statute at the time of the offense establishes that property taken in the amount of $150 or more serves as a basis for a class C

felony. Any crime that is committed prior to the amendment of a penal law is unaffected by that amendment, even though sentencing might be affected by the change." The Smith court also acknowledged that, by remanding the case for a new trial, it was not remanding for a trial on a misdemeanor charge. Because, however, the Smith case concerned only whether the case could be remanded for a new trial and not what penalty or punishment could be imposed in light of the amendment to § 570.030.3(1), its rationale is not instructive.

4. Bowles' sentence of 20 years was not based on the range of punishment for a Class C felony, which was seven years. *See* § 558.011.1(3), RSMo 1994. Rather, his sentence was based on an enhanced sentence under § 558.016, RSMo 1994, because the circuit court found Bowles to be a persistent offender. "A '**persistent offender**' is one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Section 558.016.3 (emphasis in original). Section 558.016.7(3) permitted a term of imprisonment not to exceed 20 years for a Class C felony committed by a persistent offender. As a persistent offender, Bowles is not entitled to a jury recommendation as to sentence.

856, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). Wide latitude is allowed in developing evidence of motive. *State v. Hamilton*, 817 S.W.2d 8, 11 (Mo.App.1991). Evidence of prior drug use is admissible to explain a defendant's motive to steal to feed his drug habit. *State v. Sims*, 952 S.W.2d 286, 292 (Mo.App.1997). Thus, although the circuit court instructed the jury to disregard the testimony, it would have been admissible to establish motive.

■ Moreover, even if the evidence had been inadmissible, it was not sufficiently prejudicial to warrant a mistrial. In determining whether the circuit court abused its discretion in admitting the evidence, we consider the following factors:

1) whether the statement was, in fact, voluntary and unresponsive [to the prosecutor's questioning if the prosecutor asked the question] ... or whether the prosecution "deliberately attempted to elicit" the comments ...; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution ...; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused ...; 4) whether the court promptly sustained defense counsel's objection to the statement ... and instructed the jury to disregard the volunteered statement ...; and 5) whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment "played a decisive role in the determination of guilt."

*State v. Silas*, 885 S.W.2d 716, 720 (Mo. App.1994). The prosecutor did not elicit the statement purposefully. He was attempting to elicit testimony from the officer that he found remote controls in Bowles' pocket. The statement was a single, isolated reference and did not provide any specific details about Bowles' drug usage. The circuit court promptly sustained Bowles' objection and instructed the jury to disregard the evidence. Further,

because of the evidence and strength of the state's case, it does not appear that the brief statement played a decisive role in the determination of guilt. The circuit court did not abuse its discretion when it declined to declare a mistrial.

In his next point, Bowles asserts that the circuit court erred or plainly erred when it denied his request for a curative instruction after the circuit court sustained his objection to the state's closing argument. During its closing argument, the state said:

In fact, he's even hiding from the police while on a porch at 12:03 in the morning at a house where he does not live and doesn't know anybody that lives [there]. Right? That's interesting. Okay. Look at this, consider what the facts are, that he did know, he did know. Consider all the evidence. He doesn't come into court, he doesn't come in to face the charges.

Why does he not do that? You consider that. You consider that when you ·can consider his guilt on the other four counts. He doesn't show up because he's guilty. Innocent men don't just decide not to show up in court. If I'm innocent, I'm going to be there and say, I didn't do it.

Bowles initially objected to the state's argument on the ground that it was an "improper personalization." The circuit court, however, said, "Well, I think the real risk is that you're starting to say that he has some obligation to answer ·the crime ... by saying that he is not guilty, so don't proceed along these lines. Do something else." Bowles responded, "Exactly, and he's shifting the burden to us[.]" Bowles then asked the court to instruct the jury that the comments made by the state were improper and should not be considered. The circuit court overruled Bowles' request.

■ Bowles argues that the state's argument (1) suggested that to the jury that it could consider Bowles' alleged guilt on

the failure to appear charge as evidence of his guilt on the other crimes charged, (2) constituted a direct reference on Bowles' failure to testify, and (3) impermissibly shifted the burden of proof to the defense. Bowles, however, did not raise these claims in his motion for new trial; therefore, he did not preserve these issues for our review.[5] *State v. Knese*, 985 S.W.2d 759, 772 (Mo. banc), *cert. denied*, 526 U.S. 1136, 119 S.Ct. 1814, 143 L.Ed.2d 1017 (1999). Bowles nonetheless requests that we review it for plain error pursuant to Rule 30.20.

Unless a claim of plain error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,'" we should decline a request that we exercise our discretion to review the claim for plain error. *Brown*, 902 S.W.2d at 284. Bowles does not present such a claim.

We will reverse a conviction for improper closing argument only if Bowles establishes that the comment had a decisive effect on the jury's determination. *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993). After reviewing the record, we find nothing to support a finding that the state's comment was of decisive significance. The thrust of this portion of the state's closing argument concerned the failure to appear charge. Evidence of Bowles' arrest for failure to appear at pretrial matters was admissible evidence of flight to show defendant's consciousness of guilt. *State v. Chapman*, 876 S.W.2d 15, 18 (Mo.App.1994).

While direct or indirect comments on a defendant's failure to testify are forbidden, *State v. Redman*, 916 S.W.2d 787, 792 (Mo. banc 1996), the Supreme Court has instructed that, when reviewing a defendant's claim of an improper comment on his right not to testify, we must consider the comment "in the context in which it appears." *State v.*

*Neff*, 978 S.W.2d 341, 345 (Mo. banc 1998); *State v. Richardson*, 923 S.W.2d 301, 314 (Mo. banc), *cert. denied*, 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996). The state's comment, "If I'm innocent, I'm going to be there and say, 'I didn't do it,'" is an indirect comment on Bowles' failure to testify. An indirect reference to a defendant's failure to testify, however, requires reversal only if the state makes it with "a calculated intent to magnify" the defendant's decision not to testify so as to call it to the jury's attention. *Richardson*, 923 S.W.2d at 314. Taking the statement in context, we find no indication that the state intended to call the jury's attention to the fact that Bowles did not testify. *Neff*, 978 S.W.2d at 344–45. The state was merely seeking to argue that the evidence of Bowles' failure to appear at pretrial matters was admissible to show his consciousness of guilt.

Moreover, Bowles did not show that the state's comments had a decisive effect on the jury in light of the circuit court's decision to sustain the objection but to decline to instruct the jury to disregard the comment. In fact, the record refutes any claim that the comments had a decisive effect on the jury in that it shows the jury acquitted Bowles on the failure to appear charge that was the subject of the comments and on the other charges of burglary in the second degree and stealing $150 or more. Bowles' contention is without merit.

In his last point, Bowles asserts that the circuit court plainly erred in overruling his request for a mistrial, which he made in response to a question asked by the jury during its deliberations. Bowles acknowledges that he did not preserve this issue for our review because he did not raise it in his motion for new trial. *Knese*, 985 S.W.2d at 772. Hence, we can review it, if at all, only as plain error. We decline to review the matter. Bowles' claim does not facially establish substantial grounds for our believing that he has been the

---

**5.** In his motion for new trial, Bowles argued that the state's remarks were an improper personalization. He has abandoned this theory on appeal.

victim of manifest injustice. *Brown*, 902 S.W.2d at 284.

During its deliberations, the jury sent a note to the court asking, "At which time did Christine Malamanig positively identify the defendant that she confirmed in court on November 3, 1998?" The parties agreed that Malamanig did not identify Bowles. In response to the question, Bowles asked that the jury be instructed that their assertion of that fact was wrong, and the state asked that the jury be instructed to rely on their collective memory of the evidence. The circuit court sent a note back to the jury, which said, "You must rely on your collective memory of the evidence[;] I cannot comment on the evidence." Bowles moved for a mistrial on the grounds that the jury had "completely misinterpreted the evidence in a material way that is likely to result in a miscarriage of justice." The circuit court denied Bowles' request for a mistrial.

We disagree with Bowles that the question necessarily proves that the jury was "completely and absolutely misguided." The question itself does not establish that the jury misinterpreted the evidence. It was merely a question, and Bowles' assertion is merely speculation. Moreover, the circuit court responded appropriately to the question by instructing the jury to be guided their collective memory of the evidence. It would have been inappropriate for the circuit court to comment upon the evidence in the case. *State v. Hudson*, 950 S.W.2d 543, 548 (Mo.App. 1997).

We, therefore, reverse the circuit court's judgment concerning sentencing and remand for a sentencing hearing. We affirm the remainder of the circuit court's judgment.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.