STATE of Missouri, Plaintiff–
Respondent,

v.

Florence A. LANGSTON, Defendant–
Appellant.

No. 27900.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2007.

Thomas D. Carver, Springfield, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

After a jury trial, Florence Langston (Defendant) was convicted of committing the class C felony of stealing in violation of § 570.030 RSMo (2000).[1] Her conviction was based upon a verdict-directing instruction which hypothesized that she could be convicted of felony stealing if "the property so taken had a value of at least Five Hundred Dollars. . . ." One of the points she advances on appeal is that the submission of this instruction was plain error because it improperly allowed jurors to convict Defendant of felony stealing with-

out finding that she had appropriated property worth at least $750, as required by the substantive law in effect at the time of the alleged offense. This Court agrees. Accordingly, the judgment is reversed and the cause is remanded for a new trial.

## I. Factual and Procedural Background

Since 1970, Dr. Gene Langevin had practiced cardiovascular medicine in Joplin, Missouri. Dr. Langevin's wife, Judy Langevin (Mrs. Langevin), was the practice manager. In June 1998, Mrs. Langevin hired Defendant as an employee. Defendant worked in the insurance and business area of the practice.

When Defendant was first employed, there was an office procedure for handling a cash payment from a patient. The employee accepting the cash posted the payment to the patient's account on the office computer, printed out a receipt, initialed it and gave it to the patient. Employees were not required to log into the computer under their name in order to print a receipt for a patient. After a receipt had been prepared, the cash was taken to the insurance department. There, the amount of the cash payment was recorded on a day sheet and in a deposit book. The cash was placed into a bank bag for later deposit. While Defendant prepared the majority of the deposits, other employees were involved as well. During office hours, the bank bag was kept in a desk drawer in the insurance area. It was not locked up, and other employees besides Defendant had access to the bag. Deposits were made at the bank two or three times per week. If the bank bag remained at the office overnight, the person with the deposit book was supposed to lock the bag in the safe.

---

1. All references to statutes are to RSMo (2000) unless otherwise specified.

About one year into Defendant's employment, employees began using receipt books to acknowledge payments by patients, but the remainder of the cash-handling procedure remained the same. During the term of Defendant's employment, Dr. Langevin's practice suffered from a considerable turnover in personnel. According to Mrs. Langevin, approximately 16 employees were hired and then departed between January 1999 and June 2000. During that time frame, Mrs. Langevin acknowledged that five other employees besides Defendant handled cash, and three other employees besides Defendant were involved in accepting money, preparing receipts, taking the money to the insurance department, preparing the day sheets and deposit book entries and making deposits at the bank.

In late 1999, Mrs. Langevin became concerned that some cash payments from patients were not being posted to their accounts or deposited at the bank. She hired accountant Angela Morelock (Morelock) to conduct a review of the office procedures. After examining the practice's financial records for eight to ten sample days, Morelock found a shortage of approximately $300 in cash receipts. Morelock submitted this list of discrepancies to Defendant to see if she had an explanation for the shortages because "she's in the best position to be able to explain some of that stuff." Defendant faxed some documents to Morelock, but she did not believe the documents satisfactorily explained the discrepancies.

On June 21, 2000, Morelock met with Defendant for 90 minutes to discuss this issue. During the meeting, Defendant initially denied that she had taken any money. After further discussion, however, Defendant admitted that she had taken cash from the practice when she needed it for gas money or to pay for her husband's medication. Defendant also said that she believed other employees from the practice had taken money. Morelock advised Defendant that "she ought to write out a statement of what had happened and how much money—indicate how much money she believed that she was responsible for taking." In compliance with that request, Defendant prepared the following handwritten statement:

I have probably been responsible for about $400 to $500 for over a year or so of cash from Eugene Langevin's medical office. I have a very ill husband, and I made a big mistake. I shouldn't of used his illness for what I done. I would like to pay it back either in working hours or payments. I will resign my position right away if that's what is requested, or work until payment is made back to Dr. Langevin, and then resign. I also feel I am not the only employee for lost funds. I only had cash copayments or on account payments; never any checks of any kind. I have also been short on my payroll checks for payment, vacation.

After preparing this statement, Defendant was immediately terminated from her employment. Thereafter, Mrs. Langevin requested that Morelock conduct a fraud investigation. During this investigation, Morelock reviewed the practice's financial records for a 30–month period and found further discrepancies in reconciling the cash receipts. Her examination of the day sheets, computer receipts and deposit slips for the time period between October 1999 and June 2000, revealed a cash shortage of $682.40. A comparison of the handwritten receipt books and patient receipts with accounts receivable revealed an additional sum of $608.83 that had not been credited to patient accounts during that same time frame. Morelock suspected that Defendant took the money because she was the "primary centralized collection point for all

of the cash." That suspicion, however, was based upon the assumption that Defendant was essentially the only person at Dr. Langevin's office who accepted cash, wrote receipts for patients, posted payments to patients' computerized accounts, reconciled the day's receipts and prepared the bank deposit. Based upon that assumption, it was Morelock's opinion that Defendant was the only person at the office who had sufficient control over these different processes to steal the money. Morelock admitted, however, that other employees besides Defendant accepted money from patients and wrote receipts to them. Moreover, Morelock was not able to examine a number of the cash receipt books, which documented which employee accepted a patient's cash payment. As Morelock explained, "during a significant period of this time the cash receipt books are missing. There are none. They are gone." Finally, Morelock also conceded that other employees besides Defendant could post entries into patient accounts on the computer. During her investigation, she discovered that "[y]ou can actually go into their system and you can look at who entered various entries into the computer, but in our early testing we determined that they were using each other's user names and passwords, and we could not rely on who made what entries in the computer system."

In September 2002, Defendant was charged by information with committing the class C felony of stealing in violation of § 570.030. A copy of the original information was not included in the legal file. In March 2006, an amended information was filed. According to the amended information, Defendant allegedly committed this crime between October 1999 and June 2000 by appropriating at least $500 in cash from Gene Langevin. During that time frame, however, violation of § 570.030 was not a class C felony unless the value of the appropriated property or services was $750 or more. *See* § 570.030.3(1).[2]

In March 2006, Defendant's case was tried to a jury. Mrs. Langevin and Morelock testified for the State. The facts summarized above were drawn from their testimony. The State did not call any witnesses who actually observed Defendant take any cash whatsoever from her employer. The only witness directly linking Defendant to the missing money was Morelock. She suspected Defendant had stolen cash based on the results of the fraud investigation, and Morelock also had heard Defendant admit to taking $400 to $500 in cash from Dr. Langevin. Defendant's case was presented through her own testimony and that of her expert witness, Stan Schmidt (Schmidt). According to Defendant, at least half a dozen employees at the office handled cash. Whoever received the cash was supposed to write a note on it and place it in the bank bag. Besides Defendant, three other insurance clerks were able to post payments to patient accounts. They also kept the bank bag and made deposits at various times. Defendant disavowed the written statement she had given to Morelock and denied stealing any money. Defendant claimed she was pressured into giving the statement by Morelock's threats to report the matter and expose Defendant and her family to adverse press coverage. Schmidt, who was a certified public accountant, had examined the cash handling procedures at Dr. Langevin's office. Schmidt opined that Dr. Langevin did not have sufficient

---

**2.** In 2002, the General Assembly amended § 570.030 by making the violation of this statute a class C felony if the value of the appropriated property or services was at least $500 dollars, but less than $25,000. 2002 Mo. Laws 578. This statutory change did not become effective until August 28, 2002. Id. at vii; § 570.030 RSMo Cum.Supp. (2003).

controls in place to prevent misappropriation from taking place and that it would be relatively difficult to pinpoint any one person who was responsible for the loss.

During the instruction conference, the prosecutor tendered Instruction No. 6. This verdict-directing instruction hypothesized that Defendant could be convicted of felony stealing if "the property so taken had a value of at least Five Hundred Dollars...." At that point, the following colloquy occurred:

> [Defense counsel]: I need to object [to] ... the verdict director for the felony stealing. It lists that the dollar amount is five hundred dollars. I believe the statute in effect at the time the crime occurred was $750, and I think we'll object that it's not a proper instruction in that it doesn't list the correct dollar amount required to establish a felony.
> THE COURT: I know at one point the amount was 750, and it was changed to 500. [Prosecutor], did you check that issue?
> [Prosecutor]: I did, your Honor, and, in fact, several years ago, probably approximately three years ago, we amended our information to allege the $500 amount during the period of October of '99 through June of 2000, to reflect the period at which it was $500.

Based on the prosecutor's response, the court overruled the objection. Unfortunately, that response was absolutely wrong for the reasons already set forth above. During the time frame alleged in the information, the State had to prove that Defendant appropriated property worth $750 or more in order to convict her of felony stealing. The court also decided to submit Instruction No. 7, which was the verdict-directing instruction for the lesser-included offense of misdemeanor stealing. This instruction was essentially identical to Instruction No. 6 except for the omission of the finding relating to the dollar amount required to make the offense a felony.

During closing argument, the prosecutor reviewed Instruction No. 6 with the jurors and pointed out that they could find Defendant guilty of felony stealing if "the property so taken had a value of at least five hundred dollars...." In summarizing the evidence, the prosecutor reminded the jurors that Defendant had confessed to taking money and "the amount that she confessed to was four or five hundred dollars." During the rebuttal portion of the State's closing argument, the prosecutor returned to that theme by arguing that the jury should "[h]old her accountable. Find her guilty for felony stealing. She admits four to five hundred dollars."

The jury retired to deliberate at 10:10 a.m. At 11:35 a.m., the jurors sent out the following question: "The defendant is accused of stealing over $4,500. Was all of the money in question documented with signed receipts or just found missing? Was it attributed to [Defendant]?" The court answered the question by telling the jurors that "[y]ou will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions." The jury found Defendant guilty of felony stealing pursuant to Instruction No. 6.

The guilty verdict was returned on March 16, 2006. Defense counsel did not request any additional time to file a motion for new trial, so it had to be filed no later than March 31, 2006, in order to be timely. *See* Rule 29.11(b).[3] On April 25, 2006, Defendant filed a motion for new trial and a separate motion requesting leave to file

---

**3.** All references to rules are to Missouri Court Rules (2006).

the motion for new trial out of time. On July 10, 2006, the trial court sentenced Defendant to serve five years in prison, but execution of the sentence was suspended. Defendant was placed on supervised probation and ordered to serve 40 days in the Newton County jail. The court did not rule upon either of Defendant's after-trial motions before imposing sentence and entering judgment. This appeal followed.

■ In Defendant's first point on appeal, she challenges this Court's jurisdiction to decide the merits of her appeal due to the lack of a final judgment. "Appellate jurisdiction exists for criminal cases only after a final judgment." *Stevens v. State*, 208 S.W.3d 893, 894 (Mo. banc 2006). A judgment in a criminal case is final when the sentence is entered. *State v. Williams*, 871 S.W.2d 450, 452 (Mo. banc 1994). Citing Rule 29.11(c) and *State v. Frezzell*, 66 S.W.3d 762, 763 (Mo.App. 2002), Defendant argues that there is no appealable final judgment here because she was sentenced before the trial court ruled on her motion for new trial. For the reasons explained below, these authorities do not support Defendant's argument.

■ Rule 29.11(c) states, in pertinent part, that "[n]o judgment shall be rendered until the time for filing a motion for new trial has expired and if such motion is filed, until it has been determined." In applying this rule, the eastern district pointed out in *Frezzell* that "[s]entencing made prior to the filing and ruling on a timely motion for new trial is premature and void." *Frezzell*, 66 S.W.3d at 763. Thus, as used in Rule 29.11(c), the eastern district construed the phrase "such motion" to mean a timely filed motion for new trial. That is the same construction previously placed on the rule by this Court. *See State v. Ramos*, 751 S.W.2d 135, 135–36 (Mo.App.1988) (sentence imposed prior to ruling on a timely motion for new trial

was premature and void). In the case at bar, Rule 29.11(c) is inapplicable because Defendant's motion for new trial was untimely. Rule 29.11(b) states:

A motion for a new trial or a motion authorized by Rule 27.07(c) shall be filed within fifteen days after the return of the verdict. On application of the defendant made within fifteen days after the return of the verdict and for good cause shown the court may extend the time for filing of such motions for one additional period not to exceed ten days.

Since Defendant did not request any extension of time, her motion for new trial had to be filed within 15 days after the verdict in order to be timely. *Id.* Defendant did not meet that deadline. Instead, her motion was filed 40 days after the guilty verdict had been returned. The time limitations in Rule 29.11(b) for filing a motion for a new trial are mandatory. *State v. Kohser*, 46 S.W.3d 108, 111 (Mo. App.2001); *State v. Yates*, 982 S.W.2d 767, 769 (Mo.App.1998). A trial court lacks the power to waive or extend the time for filing a motion for new trial beyond that authorized by Rule 29.11(b). *State v. Warden*, 753 S.W.2d 63, 64 (Mo.App.1988); *State v. Sloan*, 664 S.W.2d 41, 42–43 (Mo. App.1984). Because Defendant's motion was untimely, it was a nullity and is treated procedurally as though it had never been filed. *See, e.g., State v. Parker*, 208 S.W.3d 331, 334 (Mo.App.2006); *State v. Garner*, 976 S.W.2d 57, 60 (Mo.App.1998); *State v. Young*, 943 S.W.2d 794, 799 (Mo. App.1997). Therefore, the trial court was not obliged to rule on Defendant's untimely motion for new trial or even give Defendant a hearing on it. *State v. Warren*, 469 S.W.2d 662, 664 (Mo.App.1971). Indeed, the court lacked the jurisdiction to grant such an untimely motion either pursuant to Rule 29.11(b) or on its own initiative pursuant to Rule 29.13(b). *See, e.g., State*

*ex rel. Baker v. Kendrick,* 136 S.W.3d 491, 494 (Mo. banc 2004); *Dorsey v. State,* 156 S.W.3d 825, 829 (Mo.App.2005); *State v. Davis,* 698 S.W.2d 600, 602–03 (Mo.App. 1985). We hold that there was no violation of Rule 29.11(c) because the trial court did not render its judgment until after the time for Defendant to file a motion for new trial had expired. Accordingly, Defendant's first point is denied.

■ In Defendant's second point, she contends that the trial court erred in giving Instruction No. 6 because it misstated the law by instructing the jurors that they could convict Defendant of felony stealing if "the property so taken had a value of at least Five Hundred Dollars" when § 570.030 actually required proof that the value of the appropriated property or services was $750 or more. Although Defendant did object to Instruction No. 6 on that ground at the instruction conference, she failed to preserve the issue by raising it in a timely filed motion for new trial. *See* Rule 28.03. Therefore, Defendant asks this Court to review for plain error.

■ Rule 30.20 gives this Court the discretionary authority to grant relief based on plain error "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "For instructional error to rise to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice. It must be apparent to the appellate court that the instructional error affected the jury's verdict." (citations omitted). *State v. Cooper,* 215 S.W.3d 123, 125 (Mo. banc 2007). A verdict-directing instruction must contain each element of the charged offense and require the jury to find every fact necessary to constitute the essential elements of that offense. *State v. Doolittle,* 896 S.W.2d 27, 30 (Mo. banc 1995).

Thus, as a general rule, an instructional error that results in the State being relieved of proving a disputed element of its case is plain error, requiring reversal. Otherwise, in violation of due process, the State could obtain a conviction without the jury deliberating on and determining a contested proof element. (citations omitted). *State v. January,* 176 S.W.3d 187, 197–98 (Mo.App.2005). After a careful review of the record, we conclude that the trial court did commit plain error in giving Instruction No. 6. This instruction positively misdirected the jury as to an essential element of the State's case, and the error resulted in a manifest injustice to Defendant because she was convicted of felony stealing without the jury being required to decide all of the essential elements of that offense.

Defendant was charged with stealing cash from her employer between October 1999 and June 2000 in violation of § 570.030. Based upon the substantive law in effect during that time frame, the State had to prove that Defendant stole at least $750 from her employer to be convicted of a felony. *See* § 570.030.3(1). In 2002, this statute was amended so as to lower the threshold amount necessary to prove felony stealing. *See supra,* note 2. This change in the substantive law, however, had no effect on Defendant's prosecution. *See* § 1.160.

■ In every criminal case, it is the trial court's duty to instruct the jury in writing "upon all questions of law arising in the case that are necessary for their information in giving the verdict." Rule 28.02(a). Subsection (c) of this rule provides that "[w]henever there is an MAI–CR instruction or verdict form applicable under the law and Notes On Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." Rule

28.02(c). At Defendant's trial, the verdict-directing instruction that should have been given to submit felony stealing was the 9–1–99 version of MAI–CR 3d 324.02.1. In pertinent part, the third Note on Use for this instruction states that "[s]tealing is a class C felony if the value of the property or services appropriated is seven hundred fifty dollars or more. . . ." Instruction No. 6, however, appears to have been patterned after the 6–27–03 version of MAI–CR 3d 324.02.1. In pertinent part, the first Note on Use for this version of the instruction states that "[t]his is a revision of MAI–CR 3d 324.02.1 (9–1–99). The legislative changes in 2002 should be used for offenses occurring on or after August 28, 2002." The trial court was duty-bound to correctly instruct the jury on the substantive law that governed Defendant's trial. *See State v. Gotthardt,* 540 S.W.2d 62, 66 (Mo. banc 1976); *State v. Goucher,* 111 S.W.3d 915, 920 (Mo.App.2003); *State v. Carter,* 585 S.W.2d 215, 218 (Mo.App.1979). By giving Instruction No. 6, the trial court erred.

The State argues, however, that this instructional error did not rise to the level of plain error because the value of the stolen property was not disputed at trial. We find that argument unpersuasive. The jury was presented with evidence that other employees besides Defendant received money from patients, prepared receipts, made entries in the office computer, prepared deposits and had access to the bank bag where cash was kept. Defendant's expert, Schmidt, testified about the poor cash handling procedures at Dr. Langevin's office and opined that it would be relatively difficult to pinpoint who was responsible for the loss. During the meeting with Morelock, Defendant admitted taking $400 to $500 in cash from Dr. Langevin's office over the course of a year. The note sent out by the jury during deliberations indicates concern about the lack of proof connecting Defendant to the missing money. The court's response that the jurors should recall the evidence and follow the instructions could have resulted in Defendant being convicted of a felony based on nothing more than her admission that she stole $500 from her employer.[4]

In conclusion, the trial court committed plain error by giving Instruction No. 6 because it did not require the jurors to determine that Defendant took property with a value of $750 or more. *See State v. Bowles,* 23 S.W.3d 775 (Mo.App.2000). In *Bowles,* the defendant was charged with stealing in violation of § 570.030. The trial court gave a verdict-directing instruction which permitted the jury to find the defendant guilty of a felony if the property taken had a value of $150 or more. The instruction should have required the jury to find that the property taken had a value of $750 or more. *Id.* at 778–79. The western district of this Court held that plain error had occurred because MAI–CR 3d 324.02.1 required the jury to make the correct factual determination concerning the value of the property stolen. *Id.* at 779. We reach the same conclusion here. Defendant's second point has merit and is granted.

Defendant's final point challenges the sufficiency of the evidence to support her conviction. In light of our disposition of Point II, Defendant's third point is moot.

**4.** The State argues that we should ignore these facts because Defendant disavowed her admission at trial and testified that she did not steal anything. We decline to do so. It was the prosecutor who placed Defendant's admission in evidence during the State's case-in-chief and who relied upon that admission twice during closing argument to show that the State had met its burden of proof.

Due to instructional error resulting in manifest injustice, the judgment must be reversed. The case is remanded for a new trial.

GARRISON and BARNEY, JJ., Concur.